UNITED STATES BANKRUPTCY
COURT SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

                                             Chapter 11 (SubChapter V)

THE CRYSTAL SPOON CORP.,

                                             Case No. 22-22277-shl

                              Debtor.
---------------------------------------------------------X

## AMENDED SMALL BUSINESS SUB-CHAPTER V PLAN OF REORGANIZATION

## ARTICLE I
## DEFINITIONS

Unless the context requires, the following capitalized terms shall have the following meanings ascribed to them in this Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Where the context requires, any definition applies to the plural as well as the singular number.

1.1    **"Accountant"** means Armaan Shaviri whose retention was authorized by the Bankruptcy Court.

1.2    **"Administrative Claim"** means a claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such claim.

1.3    **"Administrative Expense"** means any cost or expense of administration of this case, other than Bankruptcy Fees, allowable under sections 503(b) or 330 of the Bankruptcy Code.

1.4    **"Allowed"** means a claim against or interest in the Debtor that has not

been disallowed pursuant to a Final Order and is not a disputed claim and (i) with respect to which a Proof of Claim has been timely filed with the Clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.5     "**Bankruptcy Court**" means the bankruptcy court presiding over the Debtor's Chapter 11 case.

1.6     "**Bar Date**" means any date set by Order of the Bankruptcy Court subsequent to which a Proof of Claim or Proof of Interest is not timely filed.

1.7     "**Cash**" means legal tender of the United States of America and includes funds held by the Debtor in bank accounts including the Debtor-in-Possession operating account.

1.8     "**Claim**" means a claim as defined in section 101 (5) of the Bankruptcy Code.

1.9     "**Class**" means a category of substantially similar Allowed Claims as established pursuant to Article 3 of the Plan.

1.10    "**Confirmation**" means the entry of the Confirmation Order.

1.11    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court and becomes a Final Order.

1.12    "**Confirmation Order**" means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code in form and substance reasonably satisfactory to the Debtor.

1.13    "**Customer Credits**" mean credits due to customers due to advance payments and/or promotional or incentive benefits extended by the Debtor.

1.14　　"**Debtor**" means The Crystal Spoon Corp.

1.15　　"**Disbursing Agent**" means any entity designated in the Confirmation Order to make distribution in accordance with the terms of the Plan.

1.16　　"**Effective Date**" means the first business day after the Confirmation Date and the other conditions to the Effective Date set forth herein have occurred.

1.17　　"**Estate**" means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.18　　"**Executory Contract**" means an executory contract within the meaning of section 365 of the Bankruptcy Code and includes leases to which the Debtor is a party.

1.19　　"**Final Order**" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.20　　"**Ghiron**" means Ashley Ghiron formerly known as Paul Ghiron, the Debtor's principal.

1.21　　"**Interest**" means an equity interest in the Debtor.

1.22　　"**IRS**" means the Internal Revenue Service.

1.23　　"**Landlord**" means NYIP Owner I LLC the owner of the premises at 175 Clearbrook Road, Elmsford, NY 10523 from which the Debtor operates as successor in interest to Mack-Cali CW Realty Associates LLC.

1.24　　"**Lease**" means the lease agreement between the Debtor and the Landlord.

1.25     "**NYS**" means the New York State Department of Taxation and Finance.

1.26     "**NY DOL**" means the New York State Department of Labor.

1.27     "**Pandemic**" means the COVID-19 global pandemic.

1.28     "**Petition Date**" means May 18, 2022, the date on which this case was commenced by the filing of a voluntary petition for relief under Sub-Chapter V of Chapter 11 of the Bankruptcy Code by the Debtor.

**1.29**     "**Plan Fund**" are the funds paid by the Debtor to be distributed to Holders of Allowed Claims under the Plan.

**1.30**     "**Prior Case**" means the Debtor's prior Chapter 11 case filed on February 25, 2016 bearing case number 16-22238-rdd.

1.31     "**Priority Claim**" means a claim entitled to Priority under section 507(a) of the Bankruptcy Code with the exception of Administrative Claims.

1.32     "**Professional**" means all professionals employed by the Debtor under section 327 of the Bankruptcy Code pursuant to a Final Order.

1.33     "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order following application, in accordance with section 330 of the Bankruptcy Code.

1.34     "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.35     "**Property**" means the assets of the Debtor, as listed on Schedules A/B of the Petition, or otherwise noted in this Plan.

1.36     "**Pro Rata**" means the proportion an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.37     "**Schedules**" mean the schedules of assets and liabilities and the filed by

the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.38    "**Trustee**" is and refers to the Sub-Chapter V Trustee, Salvatore LaMonica.

1.39    "**US SBA**" means the United States Small Business Administration.

1.40    "**US Trustee**" or "UST" means the Office of the United States Trustee.

1.41    "**Unsecured Claim**" means a Claim, that is not an Administrative Claim or a Priority Claim.

1.42    "**Unexpired Lease**" means an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

## ARTICLE II
## BACKGROUND

On May 18, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor elected to be treated as a Small Business under Sub-Chapter V.  The Debtor is a New York Corporation with its principal place of business at 175 Clearbrook Road, Elmsford, NY 10523 which it occupies pursuant to a written lease. The Debtor is in the business primarily of co-packing and distributing prepared meals. The Debtor's business includes: (i) traditional business of delivery of prepared meals; (ii) on-site catering and barbequing; (iii) preparation of gourmet upscale meals; and (iv) food production of human grade pet food. The Debtor has approximately 44 non-insider employees, the vast majority of which are "full-time."

The Debtor filed the instant case after the Prior Case was dismissed.  Although in the Prior Case, the Debtor's Chapter 11 Small Business Plan of Reorganization was

confirmed,[1] the Debtor was unable to fully consummate it.   The Debtor's default under the plan in the Prior Case resulted in the dismissal.   In the Prior Case, the Debtor failed to satisfy statutory fees that were asserted by the US Trustee.  As explained more fully below, the US Trustee filed a Claim in the instant case representing amounts that it asserts are due and owing.

The Debtor's current financial predicament was the result of losses suffered from the COVID-19 pandemic and loss of various customers.  In addition, the Debtor's inability to collect on its receivables caused a severe strain on its finances.   The Debtor filed for Chapter 11 relief after New York State commenced collection efforts on a disputed obligation.   The Debtor believed that Chapter 11 would provide a mechanism for paying all creditors in an orderly fashion rather than a proverbial "race to the courthouse".

Since the filing, the Debtor has continued in the management of its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

No official committee of unsecured creditors or other statutory committee and no examiner has been appointed in this case.  Salvatore LaMonica serves as the Sub-Chapter V Trustee.

Notably, since the filing, the Debtor has continued its operations, now which primarily consist of supplying nutritious and affordable prepared meals to individuals, many of whom are elderly, home bound, and/or on public assistance and may not otherwise have access to nutritious meals.  The Debtor also continues to produce "human grade" canine food.

The Debtor reviewed its long-term business plan and has determined that it can adequately fund a plan from cash on hand and projected revenue.

---

[1]   The Debtor's plan in the Prior Case was confirmed on December 6, 2018 prior to the effective date of the Small Business Reorganization Act on February 19, 2020.

## The Debtor's Assets and Operations

The Debtor's assets include cash on hand, receivables, raw materials, food products, dry food, miscellaneous office furniture (8 computers, printers) and various refrigerators, ovens and tools.   The Debtor also owns a 2019 Jaguar automobile used by Ghiron.  A liquidation analysis is annexed hereto as Exhibit A.

The Debtor's revenue has consistently increased over the past 3 years as reflected in the estimates below:

|      | Revenue        | Expenses       | Estimated Profit |
|------|----------------|----------------|------------------|
| 2019 | $5,638,164.00  | $5,634,444.00  | $3,720.00        |
| 2020 | $6,088,039.59  | $6,083,289.59  | $4,750.00        |
| 2021 | $7,535,752.71  | $7,531,812.71  | $3,940.00        |

During COVID, the Debtor's revenue from "human grade" canine food and catering decreased significantly while revenue from direct to consumers increased as a result of customers stuck in their homes.   Since the easing of COVID restrictions, the Debtor's revenue has increased as a result of a new canine human grade dog food contract while direct to consumer revenues have remained steady.

During the pendency of this case, the Debtor received approximately $800,000.00 in tax refund credits under the Employee Retention Credit Program (the "ERC") enacted in response to COVID-19.  The funds, which cover two quarterly periods, were deposited into the Debtor-in-Possession account and reflected on the Debtor's Monthly Operating Reports filed with the Court.   The Debtor is in the process of applying for additional relief.  The Debtor hopes to receive an additional $100,000.00 for an additional quarterly period.  As of the date hereof, the Debtor has not received any additional funder under the ERC.

Ghiron, who oversees operations and devotes considerable time to the Debtor,

historically received no salary or only a modest one. Ghiron currently receives a small stipend and benefits total approximately $30,000.00 per year.

## PROJECTIONS

Ghiron has prepared financial projections for the Debtor for approximately the next 5 years. A copy of those projections is annexed hereto as Exhibit B.

The Debtor anticipates earning a profit each month and also reasonably anticipates that profits will be more than sufficient to meet expenses and satisfy Holders of Allowed Claims in full.

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all holders of Allowed Claims will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation. Ghiron prepared a liquidation analysis, a copy of which is annexed hereto as Exhibit A. The Debtor believes that under the Plan, holders of Allowed Claims will receive a distribution of 100% of their claims over a 5-year period.

As noted above, the total that the Debtor will devote to the Plan is greater than any reasonably projected recovery in a liquidation of its business.

## CLAIMS

Ten claims were filed against the Debtor. A schedule of Claims together with a copy of the Official Claims Register are together annexed hereto as Exhibit C. Certain claims are discussed below.

### The US SBA Claim

Pre-petition, the Debtor applied for an economic disaster loan through the US SBA. The Debtor received an SBA Loan in the amount of $150,000.00. A copy of the loan agreement is annexed hereto as Exhibit D. The interest rate is 3.75%. The US SBA, which holds a security agreement and filed a UCC

financing statement, holds a security interest in the Debtor's equipment, cash and receivables.

Pursuant to the terms of the agreement between the Debtor and the US SBA, the Debtor was required to commence monthly payments of or about $731.00. At the request of the US SBA, the Debtor has already commenced making monthly payments on the date that payments became due under the agreement between the Debtor and the US SBA. Payments have been made by the Debtor directly to the US SBA. The Debtor will continue to make payments required under the terms of its agreement with the US SBA directly to the US SBA. The US SBA will be paid in full pursuant to the terms of its agreement with the Debtor.

## The US Trustee Claim

The US Trustee filed an unsecured claim numbered 1 in this case based upon statutory fees allegedly owed by the Debtor in the Prior Case. The Debtor paid $160,079.43 in fees to the US Trustee in the Prior Case. The UST alleges that $145,761.82 remains due and owing.

On June 2, 2022, the United States Supreme Court in the landmark decision *Seigel v Fitzgerald*, (Dkt. No. 21-441) unanimously held that certain fees charged by the US Trustee were unconstitutional. The Debtor believes that a significant portion of the fees billed by the US Trustee and asserted in its Claim fall within the rubric of *Siege*l and violated the Constitution. As such, it is the Debtor's position that the US Trustee Claim should be adjusted and reduced by at least the amounts that the Debtor paid during and after 2018.

In the spirit of compromise and in good faith, counsel reached out to Erin Hogan, Divisional Chief of the UST, who signed the proof of claim, with the goal

of resolving the claim and reconciling the amount due on a consensual basis without litigation. Ms. Hogan responded that she would follow up. Counsel also reached out to a case administrator for guidance in general regarding this matter.

Based upon communications with the UST's representative, counsel has not yet moved to reduce the US Trustee Claim. It is unclear at this juncture whether the 4th Circuit will fix a remedy or whether a remedy will be proposed independent of or in conjunction with the 4th Circuit. Moreover, it is counsel's understanding that the UST intends to further appeal any relief granted. The Debtor's goal is to resolve the UST Claim without litigation. Absent resolution, the Debtor may object to the US Trustee Claim. It is submitted that it is the best course of action to await the outcome of the appeals or resolve the claim. As such, the Debtor will be afforded one year from the Effective Date to object to such Claim as set forth more fully below.

The Debtor anticipates that the US Trustee will be paid in full on its Allowed Claim as it may be reduced.

### **The IRS Claim and NYS Claim**

The IRS and NYS filed claims numbered 2 and 5 respectively for unpaid income tax liabilities. NYS filed amended claim numbered 2 in the total amount $155,171.14 of which $102,867.19 is classified as a Secured Claim, $24,717.46 as Priority Claim and $18,246.13 as a general Unsecured Claim. The IRS filed amended claim numbered 5 in the total amount of $348,974.45 of which $182,795.70 is classified as a Priority Claim and $166,178.75 is classified as a general Unsecured Claim.

The Debtor is reviewing the claims, including the penalty portions and

reserves its right to object to same.

## The Landlord Claim

The Landlord filed a Claim numbered 9 in the amount of $47.130.20 for amounts allegedly due under Lease. Included in such claim is $30,737.14 representing the May rent which the Debtor paid. The Debtor has assumed the Lease and cured amounts due to the Landlord. Any additional amounts that may be due will be satisfied under the Plan.

## THE PLAN

(a) Funding

The Debtor shall make payments from future operations. The Debtor will fund the Plan with at least $806,000.00 payable as follows:[2] an initial payment of payment of $206,000.00 and $30,000.00 per quarter commencing on September 30, 2023 until paid. In addition, the net proceeds of any funds received under the ERC will be available for contribution to the Plan. The payments by the Debtor shall be paid into the Plan Fund which shall be administered by the Disbursing Agent. The initial payment will be made by the Debtor to the Disbursing Agent on the Effective Date. Successive payments will be made on September 30, December 31, March 31 and June 30 for each successive year for 5 years. The Debtor shall increase the amount in the Plan Fund in the event that there is a short fall. The Debtor has sufficient Cash on hand to make the initial payment due under the Plan. As reflected in the May Operating Report filed as Dkt. No. 81, as of May 31, 2023, the Debtor had approximately $580,000.00 in Cash on hand.

---

[2] Such amount is sufficient to pay in full all Claims other than the US SBA and the Landlord which have already been satisfied or will be satisfied pursuant to their respective agreements with the Debtor. Such Claims (exclusive of the Landlord and the US SBA total $805,551.88. Administrative Claims including Professional fees approved by the Court will be paid from the Debtor's Cash on hand.

(b) Projected Recovery of Avoidable Transfers

The Debtor is not aware of preference, fraudulent conveyance or any other avoidable transfers to be pursued.

## ARTICLE III
## DESIGNATION OF CLAIMS AND INTERESTS

All Claims and Interests, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1-** shall consist of any unpaid portion of the Landlord's Claim.

**Class 2 –** shall consist of the US SBA Claim.

**Class 3 –** shall consist of the Secured Claim of NYS.

**Class 4 -** shall consist of all Allowed Priority Claims which consist of NYS, the IRS and the New York State Department of Labor.

**Class 5** - shall consist of all other Allowed Unsecured Claims including the US Trustee Claim.

**Class 6 -** shall consist of Equity - the Allowed Interests. Currently, all Allowed Interests are held by Ghiron.

In accordance with section 1123 (a)(1) of the Bankruptcy Code, Administrative Claims have not been classified. In addition, Customer Credits are not classified.

## ARTICLE IV
## TREATMENT OF CLAIMS UNDER THE PLAN

1.      **Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction, release and discharge of their

respective claims against the Debtor

**2.     Allowed Administrative Claims**

**(A)**(i) Administrative expenses incurred by the Debtor in the ordinary course of business following the Petition Date are expected to be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors. Any other Allowed Administrative Claims shall be paid in full in Cash by the Debtor within 10 business days after the Effective Date, or upon such other terms as agreed upon by the Debtor and the holder of such Claim.

Allowed Administrative Claims of Professionals *(i.e.* the Sub-Chapter V Trustee and counsel for the Debtor) shall by paid by the Debtor in full in Cash within ten (10 days of the entry of an order approving them or upon such other terms as agreed upon by the Debtor and the Professional.  Allowed Administrative Claims of Professionals are estimated to total no more than $50,000.00.   It is anticipated that the Debtor will have ample Cash on hand to satisfy such Claims.   As of May 31, 2023, the Debtor had approximately $580,000.00 in Cash on hand as reflected in the May Operating Report filed as Dkt. No. 81.

**3.     Customer Credits**

The Debtor will honor all Customer Credits in the ordinary course of its business.  The Debtor estimates that such credits total less than $50,000.00.  It is noteworthy that a significant portion of the total Customer Credits (approximately 2/3) are discounts offered by the Debtor to retain customers (i.e. certain customers are offered discounts or credits for future purchases as an incentive for continued business.  Such Customer Credits are not an "out of pocket" expense of the customer that the Debtor would be required to refund but a discount on a future purchase).

4. **Class 1 – <u>The Landlord Claim</u>**

The Allowed Claim of the Landlord shall be paid in full in Cash by the Debtor on the Effective Date. The Debtor has satisfied the Landlord's Claim in connection with its motion to assume the Lease. The Debtor does not believe that any further amounts are due to the Landlord. Nevertheless, to the extent that any amounts are due, the Debtor will satisfy them in full on the Effective Date. The Debtor will continue to satisfy pay post-petition obligations to the Landlord as they become due.

The holder of the Class 1 Claim is unimpaired under the Plan and not entitled to vote to accept or reject the Plan.

5. **Class 2 – <u>The US SBA Claim</u>**

The Allowed Claim of the US SBA shall be paid in full in accordance with the terms of the loan. Each month the Debtor will continue to make monthly payments of or about $731.00. As noted above, the Debtor has commenced making monthly payments required under the terms of the agreement with the US SBA. Payments will continue to be made by the Debtor directly to the US SBA pursuant to the terms of the loan until it is satisfied.

The holder of the Class 2 Claim is unimpaired under the Plan and not entitled to vote to accept or reject the Plan.

6. **Class 3 – <u>The Secured Claim of NYS</u>**

The Allowed Secured portion of the Claim of NYS in the amount of $102,267.19 shall be paid in full on the Effective Date from the Plan Fund. To the extent that the holder of a Class 3 Secured Claim is entitled to interest, the Debtor shall remit same.

The holder of the Class 3 Claim is unimpaired under the Plan and not

entitled to vote to accept or reject the Plan.

### 7. Class–4 - Priority Claims

Priority Claims filed against the Debtor total $207,563.16. Allowed Priority Claims[3] shall be paid in full in Cash from the Plan Fund, after the payment of Allowed Administrative Claims, the Class 1 Landlord Claim, and the Class 3 Secured Claim of NYS. Holders of Priority Claims will receive Distributions from the Plan Fund *pro rata* on a quarterly basis until satisfied. To the extent that a holder of a Class 4 Priority Claim is entitled to interest, the Debtor shall pay same. The Debtor estimates that holders of Class 4 Priority Claims will begin to receive distributions on the Effective Date and that the Allowed Priority Claims shall be fully satisfied approximately 16 months from the Effective Date.

The holders of Class 4 Claims are impaired under the Plan in that, although they will receive full distribution, the Debtor will satisfy the holders of such Claims over time. Therefore, holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

### 8. Class 5 – General Unsecured Claims

Unsecured Claims (excluding the Landlord) filed against the Debtor total $495,121.53.[4] Holders of Allowed Class 5 General Unsecured Claims shall receive their Pro Rata share of the balance of the Plan Fund after the payment of Administrative Claims, the Class 1 Landlord Claim, the Class 3 Secured Claim of NYS, and Class 4 Priority Claims. Holders of Allowed Unsecured Claims shall be paid in full over a period not to exceed 60 months from the Effective Date. The

---

[3] The Priority Claims are under review and may be the subject of an objection.
[4] The UST Claim and several other Claims are under review and may be the subject of an objection.

Debtor estimates that holders of Class 4 Priority Claims will begin to receive distributions approximately 16 months following the Effective Date.

Holders of Class 5 Claims are impaired under the Plan and therefore entitled to vote to accept or reject it.

### 9. Class 5 – Equity Interests

Ghiron, the holder of the Allowed Interest, shall retain her Interest in the Debtor and continue to operate at no or minimal compensation.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**Assumption and Assignment of Executory Contracts and Unexpired Leases.**

a.        On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party shall be deemed assumed in accordance with section 365 of the Bankruptcy Code.

b.        The Lease, a copy of which is annexed hereto as Exhibit E is expressly assumed.   In connection with the assumption, the Debtor filed a formal motion under 11 U.S.C. § 365 (Dkt. No. 52).

c.        **Rejection Claims. Any** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims.  Other than the Lease, the Debtor does not believe that it is a party to any other leases or executory contracts.

d.        **Bar Date for Rejection Claims.** A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor's counsel within 30 days

after the later of (i) the date of notice of the entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such claim, in which event no Proof of Claim with respect to such claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) notice of the Confirmation Date. Any such claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor or the Property.

## ARTICLE VI
## IMPLEMENTATION OF THE PLAN

a.      **Implementation.** The Debtor shall take all necessary steps and perform all necessary acts to consummate the terms and conditions of the Plan; and shall comply with all orders of the Court, including paying the Plan Fund as provided in the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect the Plan.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

a.      **Disbursing Agent.** The Debtor shall serve as the Disbursing Agent and shall make all distributions under the Plan from the Plan Fund. This shall be true even if the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code.  (Pursuant to section 1194(b) of the Bankruptcy Code, if a Plan is confirmed pursuant to section 1191(b), the Trustee shall make payments under the plan, "…except as otherwise provided in the Plan or in the order confirming the plan…").   It is submitted that given the relatively small number of creditors in the case, it is appropriate that the Debtor, assisted by its counsel, serve as Disbursing Agent.

b.　　**Timing of Distributions under the Plan.** Any payments to be made pursuant to the Plan on account of any non-disputed claim, and subject to other limitations noted, shall be made by the time stated in the Plan.

c.　　**Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, for cause, the Debtor may file and serve any objection to any Claim by the earlier of (i) the commencement of distributions to the holder of the Claim that is the subject of the objection or (ii) one year following the Effective Date.

d.　　**Prosecution of Objections.** After the Confirmation Date, only the Debtor and the Disbursing Agent shall have authority to file, compromise, withdraw or litigate to judgment objections to disputed claims. The Debtor and the Disbursing Agent shall have the right to litigate to judgment, settle or withdraw any objections to any claim or Interest.

e.　　**No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment shall be made with respect to any portion of a disputed claim unless and until all objections to such claim are resolved by Final Order.

f.　　**Distribution After Allowance.** Within 15 days after the entry of a Final Order resolving an objection to a disputed claim, the Disbursing Agent shall make distributions, to which a holder is then entitled with respect to any formerly disputed claim that has become an Allowed Claim.

## ARTICLE VIII
## INJUNCTION AND EXCULPATION
## AND RELEASE

a.　　**Injunction.** Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold claims against, the Debtor that arose before or were held as of the Effective Date,

are permanently enjoined, on and after the Effective Date, from the commencement or

continuation of any action, the employment of process, from taking any act to collect,

enforce, attach, recover or offset against such claim and taking any act to create, perfect

or enforce any lien or encumbrance against property of the estate which is to be

distributed to creditors under this Plan.   This provision shall not enjoin claims or

actions by parties or persons as to payments due under this Plan or any agreement

between the Debtor and the US SBA and the Landlord.

      b.     **Limitation of Liability**. To the extent permissible under section 1125(e)

of the Bankruptcy Code and the Confirmation Order, upon the occurrence of the

Effective Date, neither the Debtor, nor any of its officers, trustees or employees, nor any

professional person employed by any of them (acting solely in such capacity) shall have

or incur any liability to any entity for any action taken or omitted to be taken, between

the Petition Date and the Effective Date, in connection with or related to the formulation,

preparation, dissemination, Confirmation or consummation of the Plan, or any contract,

instrument, release or other agreement or document created or entered into in connection

with the case or the Plan, except in the case of fraud, gross negligence, willful

misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of

confidential information that causes damages, or ultra vires acts. Nothing in this Section

8.b shall limit the liability of Professionals pursuant to DR 6-102 of the Code of

Professional Responsibility


**ARTICLE IX**
**MISCELLANEOUS PROVISIONS**

      a.     **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142

and 1143 of the Bankruptcy Code the Bankruptcy Court may enter one or more orders in

aid of Confirmation directing the implementation of matters or actions required by the Plan.

      b.      **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in Section 1193of the Bankruptcy Code.

      c.      **Revocation.** Subject to the requirements of the Bankruptcy Code and Bankruptcy Rules, the Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

      d.      **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree.

      e.      **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

      f.      **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be delivered by electronic mail and either (i) personally, (ii) by certified mail or national recognized overnight service to the addresses specified, or pursuant to change of address as filed on ECF, or (iii) as directed in writing

by an interested party herein:

    (1)    if to the Debtor, to Anne Penachio, Penachio Malara LLP, 245 Main Street, Suite 450, White Plains, NY 10601; anne@pmlawllp.com.

    (2)    if to the Sub-Chapter V Trustee, Salvatore LaMonica, LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Wantagh, NY 11793; sl@lhmlawfirm.com.

    (3)    if to any creditor at (i) the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

    (4)    if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

    g.    **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

    h.    **Other Actions.** Nothing contained herein shall prevent the Debtor or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

    i.    **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

    j.    **Avoidance Actions.** The Debtor is not aware of any claims to avoid

transfers under Sub-Chapter V of the Bankruptcy Code. Any such avoidance claims are preserved solely as a defense to any Claim asserted against the Debtor's Estate.

## ARTICLE X
## RETENTION OF JURISDICTION

**Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the Occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)- Insure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b) Consider any modification of the Plan proposed pursuant to section 1193 of the Bankruptcy Code;

(c) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including without limitation, the resolution of any request for payment of any Administrative Claim, the resolution of any and all objections to the allowance or priority of claims, and the resolution of any adversary proceeding;

(d) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all claims arising therefrom;

(f)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan and Disclosures made herein or to enforce all orders, judgments, injunctions, and rulings entered in connection with the case, including, but not limited to any order necessary to enforce the provisions of Article VI of the Plan;

(i)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligation incurred in connection with the Plan;

(j)     Remedy any defect or omission or reconcile any inconsistency in any order, the Plan, or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k)     Issue any injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     Determine any dispute arising under or related to the Plan,

including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(n)     Determine any other matters that may arise in connection with or relate to the Plan, or the disclosures made therein, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan; and

(o)     Enter an order or Final Decree concluding this case.

**Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an order closing this case, the Bankruptcy Court shall retain jurisdiction to reopen this case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XI
## CONDITION TO THE EFFECTIVE DATE

**Condition Precedent to Effectiveness.** The Plan shall not become effective unless and until the Confirmation Order has become a Final Order and the Debtor has established the Plan Fund; provided that the Plan Fund must be established no later than thirty (30) days after Confirmation.

## ARTICLE XII
## DISCHARGE

On the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of the Plan, to the **fullest** extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)     imposed by this Plan; or

(ii)     to the extent provided in § 1141(d)(6).

## ARTICLE XIII
## CLOSING THE CASE

a.     **Substantial Consummation.** Until the occurrence of the Effective Date

and substantial consummation of the Plan, the Debtor, its property and its creditors shall

be subject to further orders of the Bankruptcy Court.

b.     **Closing the Case.** Upon the substantial consummation of the Plan, the

Debtor shall expeditiously move for the entry of Final Decree closing the case and such

other relief as may be just and appropriate.

Dated:  White Plains, NY
       July 17, 2023

                                      Penachio Malara LLP

                                      <u>/s/ Anne Penachio</u>
                                      Anne Penachio, Esq
                                      Counsel for the Debtor
                                      245 Main Street, Suite 450
                                      White Plains, NY  10601
                                      (914) 946-2889